458 S.E.2d 610

William Lee MOON and Carol Moon,
Plaintiffs Below, Appellees,

v.

MICHAEL KOSLOW CONSTRUCTION,
INC., A Corporation, Defendant and
Third–Party Plaintiff Below, Appellant,

v.

MOTORISTS INSURANCE COMPANIES,
A Corporation, Third–Party Defendant
Below, Appellee.

No. 22516.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided May 18, 1995.

Charles W. Peoples, Jr., Huntington, for appellees William Lee Moon and Carol Moon.

George A. Mills III, Huntington, for appellant Michael Koslow Const., Inc.

Charles F. Bagley III, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for appellee Motorists Ins. Companies.

PER CURIAM:

William Lee Moon and Carol Moon, plaintiffs below and appellees, filed suit in the Circuit Court of Cabell County against Michael Koslow Construction, Inc. (Koslow), defendant below and appellant, alleging it was negligent in constructing their residence. Koslow filed a third-party complaint against

its insurer, Motorists Insurance Companies (Motorists), alleging it had a duty to defend and indemnify in the suit. The circuit court referred the case to a special commissioner and adopted his findings of fact and conclusions of law that Koslow was liable for approximately $44,000 for damages to the Moon residence and that Koslow's insurance policy provided no coverage for the claim. After reviewing the record and briefs of the parties, we find the circuit court erred in referring the matter to a special commissioner when Koslow demanded its right to a jury trial. Accordingly, we reverse the judgment below and remand this case for trial.

On May 5, 1993, the circuit court conducted a pretrial conference and determined that, due to the complexity of the case, it would refer the matter to a special commissioner. The circuit court also made a preliminary finding that Motorists had a duty to defend Koslow in the suit. The special commissioner heard testimony on October 7, 1993; October 14, 1993; and November 3, 1993. The evidence presented to the special commissioner is as follows.

In June of 1988, the Moons entered into a contract with Koslow for the construction of their home in Huntington. The Moons informed Koslow that they wished to build the house based on the building plans of their previous home in Mississippi. Koslow stated that with a few modifications the home could be constructed upon the lot they had chosen. Construction began in the summer of 1988. The Moons moved into their home in January of 1989, when construction was substantially completed. Koslow performed some minor work on the house over the next few weeks, such as completing the deck and screened porch. The home was completed in early February, and Koslow was paid in full. The Moons made separate arrangements for landscaping because the contract called for Koslow to finish the site to "rough grade."

In August of 1989, a landscaper noticed certain cracks in the brick veneer of the home and notified the Moons of the problem. The house was inspected by Jack Stafford, a structural engineer, in September. Mr. Stafford found cracking at three corners of the house between the mortar joints of the brick veneer. An interior inspection revealed cracking of the block work at the right rear corner and moisture on the block walls. It was Mr. Stafford's opinion these cracks were due to ongoing differential settlement of the foundation. He stated that if a structure is settling in a nonuniform manner, it may be an indication it is situated on soft or wet materials. Concerned that an improperly graded lot could cause water problems, he inspected the lay of the lot and found no indication of improper grading. In a written report dated October 9, 1989, Mr. Stafford concluded the foundation of the home, footer drains, and waterproofing were installed by Koslow in a less than satisfactory manner. He identified the problems as serious and recommended corrective action be taken.

Michael Koslow inspected the home at the request of the Moons and encountered a remarkable amount of standing water under the crawl space. It was apparent that a foundation drain had failed because water was entering the area from the left front corner of the structure. Mr. Koslow testified that he offered to correct the damage by excavating around the house, underpinning the footer, and repairing the foundation drains, which he estimated would cost approximately $1,200, if the Moons would purchase $200 to $300 worth of brick. Mr. Moon declined the offer because he believed Mr. Koslow was going to fix only the appearance of the home and not undertake the more major problem of the origin of the water. No further discussions took place.

In November of 1989, counsel for the Moons notified Koslow of their claim. Koslow, in turn, contacted its insurer, Motorists, which denied coverage. It was Motorists' determination that it owed no duty to defend Koslow because the claim involved property damages arising out of Koslow's work on the home. Furthermore, Motorist found no coverage available under the terms of the policy based on an alleged breach of contract or implied warranty. Nevertheless, Motorists hired PACE Engineers, Inc. (PACE), to inspect the home. After receiving PACE's February, 1990, report, Motorists again advised Koslow that coverage was denied because the claim involved faulty construction.

In January of 1990, Neighborgall Construction Company (Neighborgall) made several inspections and undertook substantial repairs to the home at the request of the Moons.* The foundation was underpinned at three corners of the home, which required major excavation. Among other things, Neighborgall installed a new storm drain and new foundation drainage system and performed waterproofing measures. The cost of the repairs totaled over $43,000. The Moons also incurred over $700 in landscaping costs after the repairs were completed. Koslow did not contest the reasonableness of the cost of repairs with the exception of a few small charges.

David Dudley, project manager for Neighborgall, testified regarding the deficiencies in Koslow's work on the home's foundation. It was his opinion the home's foundation, block walls, and drainage system were below acceptable standards: the right front corner of the home's foundation drain was not installed properly; the right rear footings were not installed properly; the lack of foundation drains and waterproofing measures along the back wall of the home was not keeping with workmanlike practices; and the block wall on the rear left corner was not keeping with acceptable standards because it was not centered on footings.

Dan Aerne, an engineer employed by PACE, corroborated the testimony of Mr. Dudley and Mr. Stafford. He testified that the water problems encountered at the Moon residence were due to unworkmanlike construction performed by Koslow.

Mr. Koslow testified that all work performed on the residence met the requirements of Huntington's city building codes. He believed the water problems were the result of the landscaper's bulldozer operating too closely to the walls of the house. He stated the drainage problems were exacerbated by the construction of a house across the street from the Moon's home. Koslow also testified that had the Moons made the necessary repairs earlier, the cost would have been reduced greatly.

Koslow contends the circuit court's decision to refer this matter to a special commissioner denied its right to a jury trial as provided by the West Virginia Constitution and Rule 38 of the West Virginia Rules of Civil Procedure.

The appellees, the Moons and Motorists, respond that the decision to refer a civil matter of this nature to a special commissioner lies within the sound discretion of the circuit court. *See Hooper v. Wood,* 100 W.Va. 272, 130 S.E. 444 (1925).

■ Although the circuit court has discretion to appoint commissioners to resolve complex matters to lighten the circuit court's docket, it clearly cannot do so in violation of a party's right to trial by jury. The right to trial by jury in civil cases is found in Section 13 of Article III of the West Virginia Constitution, which provides: "In suits at common

---

* The special commissioner's findings of fact listed the defects discovered by Neighborgall:

"a. Cracks in the brick veneer at the front left, rear left and rear right corners of the house, as well as on the back of the house at the windows and at the bay window;

"b. The first course of brick veneer was a different color and cut in half at the right rear corner of the house;

"c. The front yard remained saturated after rainfall;

"d. The concrete front porch had settled;

"e. The front porch step was cracked and had a storm drain poured in the step;

"f. Cracks were found in the drywall in the family room and the entrance to the bulkhead;

"g. The carpet in the basement bedroom was about one half inch lower than the base, indicating possible slab settlement in that area;

"h. Excavation at the rear left corner revealed a PVC storm pipe had pulled apart at the joint and was full of mud and the subgrade material in that area was saturated;

"i. A four inch corrugated, perforated black pipe was found, which was the storm drain from the front of the house. The pipe was full of mud and was cut;

"j. No foundation was found along the back wall of the house and the sub-grade was highly saturated because the foundation drainage and storm drainage systems were not functioning;

"k. A vertical crack in the concrete masonry unit was found below grade at the left end wall of the rear corner of the house. The brick veneer was also cracked in this area, with the cracking extending through the mortar joints and brick;

"l. Water was found in the crawl space in several areas, and cracks were found in the concrete masonry unit in this area."

law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved[.]"

 Koslow did not waive its right to a trial by jury. In its answer to the Moons' complaint, a jury trial was demanded. Furthermore, at the pretrial conference, Koslow made a timely objection to the circuit court's decision to refer the case to a special commissioner. Rule 38(a) of the Rules of Civil Procedure provides that "[t]he right of trial by jury as declared by the Constitution or statutes of the State shall be preserved to the parties inviolate." The Syllabus of *Barker v. Benefit Trust Life Insurance Company*, 174 W.Va. 187, 324 S.E.2d 148 (1984), states:

> "Where a trial by jury has been secured by a party to litigation under W.Va. R.Civ.P. 38 or 39(b), a party to such litigation has a right to an impartial and unbiased jury; and, in order to insure that right, the party is entitled, in the absence of a waiver upon the record, to meaningful *voir dire* examination and peremptory challenges of the prospective jurors. W.Va.R.Civ.P. 47; W.Va.Code, 56–6–12 [1931]."

*See generally Warner v. Kittle*, 167 W.Va. 719, 280 S.E.2d 276 (1981). We find the circuit court's decision to refer the matter to a special commissioner violated Koslow's right to have the case tried before a jury. Accordingly, we reverse the judgment and remand this case for a trial upon the merits.

Reversed and remanded.

BROTHERTON, J., did not participate.

MILLER, Retired Justice, and FOX, Judge, sitting by temporary assignment.